THE STATE OF KANSAS, *ex rel. John J. Schenck, as County Attorney, etc., Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellee.*

No. 17,121.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Provisions of Existing Statute Extended to New Subject by Reference.* In this state the legislature may, without violating the constitution, extend the provisions of an existing statute to a new subject by an appro-. priate reference to such statute in the new act.

2. —— *Power of Legislature by Statute to Interpret an Earlier Act.* The legislature has the power, under the constitution, to declare by a later act the meaning and intention of an earlier one, and in such event the legislative interpretation is binding in all cases arising after it has been made manifest.

3. —— *Reference and Interpretative Statutes Not Amendatory.* Reference statutes and interpretative statutes are not amendatory within the meaning of section 16 of article 2 of the constitution.

4. —— *Formula to be Employed in Reference Statute.* When the provisions of a statute are extended by reference it is not necessary that any particular formula of reference be employed. If the necessary inference.from the general meaning of the new act and the purpose of the legislature in framing it be that the former statute shall .govern the new subject, the extension is as clear as if studied expressions to effect it had been used.

5. —— *Provisions of Existing Statute that Are Extended by Reference.* In cases of legislation by reference those provisions only of the extended act are incorporated in the new one which are appropriate to the new subject.

6. —— *Statute Relating to Construction and Maintenance of Levees.* Chapter 80 of the Laws of 1909 indicates that the provisions of chapter 104 of the Laws of 1893, as amended by chapter 216 of the Laws of 1905; relating to the construction and maintenance of levees, shall apply to the construction of levees partly within and partly without cities of the first class, and does not violate the section of the constitution referred to.

7. JURISDICTION—*County Commissioners—Construction of Levee*

—*Petition.* A petition to the board of county commissioners of Shawnee county praying for the construction of a levee within the city of Topeka under the provisions of the act of 1893 was circulated and signed before the act of 1909 was passed. It was presented after the act of 1909 took effect. *Held,* the petition conferred jurisdiction upon the county board to construct the levee.

8. DRAINAGE DISTRICTS—*Property Liable to Assessment—Damages for Appropriating City Streets.* In levee proceedings under the act of 1909 a city is not entitled to damages for the appropriation of its streets for the levee; but it may be assessed for benefits to its streets, consequent upon the construction of the levee, and for benefits to its water mains, hydrants and electric-light fixtures within the drainage district.

9. ———— *Bonds—Levee—County Primarily Liable.* The county is the party primarily liable for levee bonds issued under the act of 1909, the property in the drainage district being charged with their payment.

Appeal from Shawnee district court. Opinion filed July 9, 1910. Affirmed.

*Fred S. Jackson,* attorney-general, *Charles F. Spencer, Z. T. Hazen, R. H. Gaw,* and *W. C. Ralston,* for the appellant.

*Leonard S. Ferry, Edwin A. Austin, Thomas F. Doran,* and *Charles A. Magaw,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The board of county commissioners of Shawnee county undertook to construct a levee along the south bank of the Kansas river, partly within and partly without the city of Topeka. The state brought an action to enjoin the proceeding, and appeals from an order of the district court denying an injunction. The principal subject of controversy is the statutory power of the county board.

In 1893 the legislature passed an act entitled "An act to provide for the construction and maintenance of levees" (Gen. Stat. 1901, § 3905 *et seq.*), vesting power in the county board to carry out the purpose of the

statute. This statute was amended in certain particulars by chapter 216 of the Laws of 1905. In 1909 the legislature returned to the subject in an act the title and a portion of the first section of which read as follow:

"An act relating to the construction of levees through cities of the first class, supplemental to chapter 104, Session Laws of 1893, as amended by chapter 216, Session Laws of 1905.

*"Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That whenever the board of county commissioners of any county in this state shall hereafter make any order granting a petition for the construction of a levee, or levees, to promote the public health, convenience and welfare, and to prevent overflow from any natural watercourse partly within or partly without or wholly within any city of the first class, under the provisions of chapter 104 of the Session Laws of 1893, as amended by chapter 216 of the Session Laws of 1905, the lands and property embraced within the boundaries of the territory described in the order of the board of county commissioners granting such petition shall be and constitute a drainage district, and with reference thereto the county commissioners shall have power in its discretion, instead of levying the entire special assessment therefor at one time, to provide for the payment of the same by installments, and issue improvement bonds therefor, payable in installments of equal amounts each year for such number of years as may be deemed advisable." (Laws 1909, ch. 80, § 1, Gen. Stat. 1909, § 4801.)

The remainder of the act is given to the details of the drainage district and bond scheme. Express power is granted to cross the right of way of any railroad or street-railroad company with the levee, and the perpetual use of all land condemned is vested in the board of county commissioners for the purpose for which it is appropriated. None of the provisions of the previous statute is repealed, and that statute must be looked to as a guide in all particulars except those specified in the 1909 law.

The appellant argues that the law of 1893 applies to rural territory only; that, as a consequence, the law of 1909 can not be supplemental, but must be amendatory legislation, and so violates section 16 of article 2 of the constitution; and that the law of 1909 does not, independently, confer power upon commissioners to invade the city for the purpose of constructing a levee.

The section of the constitution referred to reads as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed." (Const. art. 2, § 16.)

It may be conceded that the statute of 1893 applied, when enacted, to rural territory only. This statute is not, however, amended by the law of 1909 in any particular. Every one of its provisions remains in full force for the accomplishment of every purpose for which it was originally designed. The act of 1909 merely extends, by virtue of its own terms, the provisions of the statute of 1893 to the construction of levees wholly or partially within cities of the first class. The same question arose in the case of *Wichita v. Telephone Co.*, 70 Kan. 441. The legislature, by reference statute, made the telegraph company act applicable to telephone companies. It was held that the telegraph company act was not amended.

That the legislature intended, by the act of 1909, to extend the provisions of the act of 1893 to cover the subject of levees in cities of the first class is too plain for argument. Otherwise the enactment of the 1909 statute would have been a perfectly idle piece of business. It was not essential that any particular formula of reference be employed. It is enough that such is the necessary inference from the general meaning of the act and the purpose of the legislature in framing it. In such cases the grant is as clear as if studied expres-

sions to effect it had been employed. (*Gilbert v. Craddock*, 67 Kan. 346, 352.)

That the legislature could make the provisions of the act of 1893 applicable to the subject of the act of 1909 by reference was settled in this state by the decisions in *Wichita v. Telephone Co.*, 70 Kan. 441, and *Griffin v. Gesner*, 78 Kan. 669, 670. All of the provisions of the statute of 1893 are not applicable to the subject of the act of 1909, but wherever legislation by reference is permissible it is held that only those provisions of the extended act are incorporated into the new one which are appropriate to the new subject. (2 Lewis's Sutherl. Stat. Const., 2d ed., § 405; 26 A. & E. Encycl. of L. 714.)

The foregoing interpretation of the act of 1909 seems to be required because of the difficulty encountered when an effort is made to include city levees within the terms of the act of 1893. If, however, the legislative intention has been misapprehended, the act of 1909 must be taken as a legislative interpretation that the earlier law did apply to urban territory, and in that event the result is the same.

It is a fundamental principle of constitutional law that the legislature has power to indicate by a later act what its intention was in passing an earlier one. In such event, whatever lawyer and layman may have understood or courts may have decided, the legislature's interpretation is binding in all cases after it has been made manifest. Assuming the act of 1909 to be interpretative, every provision of the act of 1893 unqualifiedly stands with reference to township levees, and most of those provisions stand with reference to city levees. Indeed, nothing is repealed, but the application of the statute is merely restrained, by implication, to the extent of the new regulation respecting city levees. Only in this sense is the old law changed, and amendments by implication are not obnoxious to the constitution.

It is said that the board of county commissioners acquired no jurisdiction to build a levee partly within the city because the petition was circulated and largely signed before the law of 1909 took effect, and because it prayed for the construction of a levee under the provisions of the law of 1893. The petition invoked the exercise of the very jurisdiction in question. It prayed for a levee partly within the city. The prayer speaks from the time the petition was presented. At that time the law of 1909 had gone into effect. It will not be presumed that the petitioners were appealing to a nonexistent power. It makes no difference whether authority to construct a levee partly within the city were conferred by the law of 1893 or by the law of 1909, which adopted the law of 1893. That power was the very one which the petition asked to be exercised.

It is said that the streets of the city of Topeka can not be taken by levee proceedings, that no damages are allowed the city for streets taken, that benefits to streets from the levee are assessed to the city, that no method for collecting such assessments is provided, and consequently that the proceedings attacked are unlawful. The city of Topeka and its streets are wholly subject to the control of the legislature. The legislature has appointed the board of county commissioners to decide whether a levee partly within a city is necessary to prevent inundation from overflowing rivers, and to promote the public health, convenience and welfare. If the decision be that such a levee is necessary, and that it must occupy a portion of a city street, one public use yields to the other. A city is not the owner of its streets in any private proprietary sense, but is merely the agent of the state respecting them for the promotion of certain public purposes. Consequently the appropriation of its streets gives the city no right to damages, under the statute, as an owner of a division of the land taken. The statute, however, does provide that benefits shall be assessed to highways, and city streets are

highways. It may be assumed that the city will discharge its lawful obligations. If it does not, the common-law remedies are available. (*Comm'rs of Franklin Co. v. City of Ottawa*, 49 Kan. 747, 756.)

The water mains, hydrants and electric-light fixtures of the city are private property, owned by it in its corporate capacity. They have a permanent situs within the drainage district, and constitute "property" and "other property liable to assessment" within the meaning of the act. There is no constitutional or other impediment to the assessment of such property for benefits conferred by an improvement of the kind in question. (2 Page & Jones, Tax. by Assess. § 548.)

The county is the party primarily liable upon the bonds provided for, the property in the drainage district being charged with their payment.

Other objections to the proceedings sought to be enjoined are untenable, and the judgment of the district court is affirmed.