(849 P.2d 140)
No. 68,140

In the Matter of the Conservatorship of ELEANOR MARKLEY HOLMAN, and

In the Matter of the Estate of ELEANOR MARKLEY HOLMAN, Deceased.

Opinion filed March 26, 1993.

*Jana D. Abbott* and *Dennis M. Feeney,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for the appellant.

*C. E. Russell,* of Wellington, for the appellees.

Before LEWIS, P.J., PIERRON, J., and DONALD L. WHITE, District Judge Retired, assigned.

WHITE, J.: Lewis C. Markley appeals the district court's decision finding he breached his fiduciary duty as a conservator and surcharging him in the amount of $206,474.24. The question is whether prior orders approving the conservator's annual accountings were final orders binding the parties. We hold that they were and that the conservator cannot be surcharged for actions previously approved by the court.

Lewis was appointed the conservator for the decedent on her voluntary application in 1980. The assets of the conservatorship were valued at $605,053.26 and included, among other things, a three-bedroom house in Colorado and United States Series "E" Bonds.

Lewis wanted to sell the Colorado property. He consulted Colorado counsel and was advised that neither notice nor court approval was required to sell the Colorado real estate. The house had been recently appraised at $78,000. Lewis, however, believed the appraisal was erroneously high based on the condition of the house and the decline in the Colorado real estate market. He testified that he felt a fair asking price for the house was between $55,000 and $60,000. In September 1982, Lewis sold the house to his daughter and son-in-law for $50,000. He did not have the property reappraised, did not list it or solicit bids, and did not seek court approval.

Lewis was also concerned about the income tax liability that would be incurred if the Series "E" Bonds were sold. He decided that by cashing in the bonds and purchasing a capital asset, he could offset the tax liability. Accordingly, he cashed in the bonds and used the proceeds to purchase a Piper Apache airplane. The cost of the plane, including advanced avionics later installed, totaled approximately $97,000. Lewis sought no court approval prior to selling the bonds and buying the airplane.

Lewis did show the sale of the bonds and purchase of the airplane in the petition to approve his annual accounting. A hearing was held on the petition to approve after notice was given. The court ordered that notice be given to Mary Louise Markley Marsh, Constance Markley McEnery, and Martin Markley. Notice was given. The court noted at the hearing that the airplane was an improper investment, but stated that "no surcharge shall be made." The court approved all of the conservator's acts in connection with the management of the estate for the period from October 17, 1980, to December 31, 1982. The conservator also submitted annual accountings from 1983 to 1987. No objections were made, and all of the annual accountings were approved. The actions for which Lewis now stands surcharged were disclosed in the annual accountings and ruled upon by the court.

On January 7, 1988, Eleanor Markley Holman died. The next month, Lewis C. Markley petitioned the court to terminate the conservatorship and approve his final accounting from the time of·his last accounting, in 1987, to Holman's death. In the meantime, Lewis was appointed administrator of the estate, with Holman's will annexed, and petitioned for final settlement of the estate.

In due time, appellee Pauline Pipkin, a specific devisee under Holman's will, filed written defenses to Lewis' probate petition. At a later date, appellee Martin Markley, a residual beneficiary under the will, filed his written defenses.

The court ordered a hearing on the final accounting on both the conservatorship and the probate of Holman's estate after her death. After hearing the evidence, the court determined that Lewis had negligently and unfaithfully dealt with the assets as Holman's conservator and as the administrator of her estate. The court ordered Lewis to restore the funds to the estate by surcharging him $206,474.24. Lewis appeals.

Lewis contends his acts as conservator for Holman were approved by the court in its orders approving his annual accountings. Lewis claims the doctrine of collateral estoppel precludes the heirs from relitigating issues already approved by the court.

The doctrine of collateral estoppel prevents the same issues from being relitigated by the same parties or those in privity with them. *In re Estate of Beason,* 248 Kan. 803, 813, 811 P.2d 848 (1991). It requires: (1) a prior judgment on the merits which determined the rights and liabilities of the parties; (2) the parties must be the same or in privity; and (3) the issue litigated must have been necessary to support the judgment. 248 Kan. at 813.

We can find no cases in which Kansas courts have addressed the issue of whether an order approving an annual accounting in a conservatorship case qualifies as a prior judgment so as to bind heirs. The Supreme Court has held, however, that annual settlements made in probate cases are not binding on the conservatee. *Jones v. Jones,* 125 Kan. 403, 410, 265 Pac. 66 (1928).

The general rule in most other jurisdictions with regard to orders approving annual accountings is that they do not have the force and effect of a final judgment. 39 Am. Jur. 2d Guardian

and Ward § 165. However, Am. Jur. notes that these proceedings are generally ex parte. This is not the case in Kansas.

K.S.A. 1992 Supp. 59-3031 provides that the annual accounting will be settled and allowed after a hearing on the matter. Furthermore, notice of the hearing must be given to all interested parties. K.S.A. 1992 Supp. 59-3030. In addition, Kansas law provides that the decision of the court allowing an annual accounting is immediately appealable. K.S.A. 1992 Supp. 59-2401(10). The appeal must be taken within 30 days from the judgment. *In re Estate of Williams,* 238 Kan. 651, 655, 714 P.2d 948 (1986).

Other jurisdictions that hold hearings to allow annual accountings have modified the rule that such approval of annual accountings is not a final judgment. In *Bourne v. Walker,* 74 Nev. 230, 233, 327 P.2d 344 (1958), a Nevada court reasoned that the rule that annual accountings are not final applies only to ex parte proceedings and not where the matter has been fully litigated. Similarly, Michigan has long held that a decision approving a final accounting that is not appealed from is conclusive. *In re Chittick's Estate,* 286 Mich. 124, 131, 281 N.W. 561 (1938).

We hold that, under K.S.A. 1992 Supp. 59-3031, settlement and allowance by the court of a conservator's accounting, after due notice, is an appealable final order. It operates to relieve the conservator and the conservator's sureties from liability for all acts and omissions which are fully and accurately described in the accounting. Such an order gives rise to the doctrine of collateral estoppel or res judicata, as the case may be.

It is argued that the 1989 amendment to K.S.A. 59-3031 compels a conclusion that such an order was not a final order prior to 1989. We disagree. The appellees argue that, when a legislature amends provisions of a statute, it is presumed the legislature intended to change the law as it existed prior to the amendment. In support of their argument, the appellees cite *Moore v. City of Lawrence,* 232 Kan. 353, 361, 654 P.2d 445 (1982); *Safeway Stores, Inc. v. Director of Revenue,* 211 Kan. 594, 595, 506 P.2d 1124 (1973); and *Curless v. Board of County Commissioners,* 197 Kan. 580, 587, 419 P.2d 876 (1966).

While the 1989 legislature did amend K.S.A. 59-3031, we believe that the purpose of this amendment was to insure that all interested parties would receive notice of a hearing on an annual

accounting. This change reflects the holding in *In re Conservatorship of L.M.S.*, 12 Kan. App. 2d 725, 726-27, 755 P.2d 22 (1988), wherein we decided that the court must give notice of a hearing to all interested parties in order to bind them.

The appellees also contend that notice was not given by Lewis to all of the heirs when he filed his accountings in the conservatorship. The heirs contend Pauline Pipkin did not receive notice of the June 13, 1983, hearing.

K.S.A. 59-1703 specifically provides: "[A]ny transaction which is affected by a substantial conflict of interest on the part of the personal representative . . . is voidable unless: . . . (2) the transaction is approved by the court after hearing upon notice to interested persons." The appellees point out that, during the conservatorship, Lewis sold the conservatee's home in Colorado to his daughter and her husband. That is a conflict of interest, and they argue proper notice of the sale was not given as required by K.S.A. 59-1703.

K.S.A. 1992 Supp. 59-3030 provides that "notice . . . shall be given to such persons and in such manner as the court shall direct." Lewis claims that, because he gave notice to the persons required by court order, he has complied with the notice requirement. However, 59-3030 does not give the court absolute discretion to decide who will receive notice and then to issue orders that bind interested parties not receiving notice. *In re Conservatorship of L.M.S.*, 12 Kan. App. 2d at 726-27.

Lewis points out that Pauline Pipkin is not an interested person who is entitled to notice since she is a specific devisee of property in Kansas. That property was not affected by the sale of the realty in Colorado or the conversion of the series "E" bonds into cash to purchase the airplane. K.S.A. 1992 Supp. 59-3030 does not define the term "interested parties." Kansas case law generally defines interested parties as those parties who have rights in the object of litigation. See *Cardin v. Apple*, 150 Kan. 162, 166, 92 P.2d 32 (1939); *In re Lathrop*, 2 Kan. App. 2d 90, 96, 575 P.2d 894 (1978).

In this case, Pauline Pipkin is not a residuary devisee under Holman's will. Instead, she is a specific devisee, with an interest only in a specific portion of land. She does not have an interest in any of the property that was involved in the June 13, 1983,

hearing. Therefore, she was not an interested party entitled to notice under 59-3030 nor under 59-1703.

During all times relevant, the laws of this state required notice to all interested parties on a petition to approve an annual accounting. Kansas law provides that an order approving an accounting is a final, appealable order. The order at issue was made after notice to all interested parties, and it is final and unappealed from. The doctrine of collateral estoppel prevents relitigation of the issues decided in the order approving the annual accounting. The order surcharging the conservator for actions previously litigated and approved was erroneous. We hasten to add that actions by the conservator which are not the subject of a final order are subject to surcharge if they are determined wrongful.

We reverse the trial court's order of surcharge only insofar as it relates to actions previously litigated on an order approving an annual accounting. We reverse and remand to the trial court for the computation of any proper surcharge consistent with this opinion.

Reversed and remanded.